UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x
UNITED STATES OF AMERICA
        -v-

RICHARD PITCHER
-------------------------------------x

JUDGMENT INCLUDING SENTENCE
UNDER THE SENTENCING REFORM ACT

CASE NUMBER:CR-03-1368(ARR)
ANTHONY V. LOMBARDINO, ESQ
101-05 LEFFERTS BOULEVARD, SUITE 207
RICHMOND HILL, NEW YORK 11419
Defendant's Attorney & Address

THE DEFENDANT:

XXX was found guilty on counts one & two of the superseding indictment a plea of not guilty.

    Accordingly, the defendant is ADJUDGED guilty of such count(s), which involve the following offenses:

| TITLE & SECTION | NATURE & OFFENSE | COUNT NUMBER(S) |
|---|---|---|
| 21 USC 952(a), 963, 960(a)(1) & 960(b)(1)(B) | CONSPIRACY TO IMPORT AT LEAST FIVE KILOGRAMS OF COCAINE. | ONE (1) |
| 21 USC 846, 841(a)(1) & 841(b)(1)(A) | CONSPIRACY TO DISTRIBUTE & POSSESS WITH INTENT TO DISTRIBUTE AT LEAST FIVE KILOGRAMS OF COCAINE. | TWO (2) |

The defendant is sentenced as provided in pages 2 through     of this Judgment.
The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

____ The defendant has been found not guilty on count(s)        and is discharged as to such count(s).

XXX Remaining counts are dismissed on the motion of the United States.

XXX It is ordered that the defendant shall pay to the United States a special assessment of $200.00 which shall be due XXX immediately ___ as follows:

It is further ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of residence or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid.

Defendant's Soc. Sec #____NONE____

Defendant's Date of Birth 8/1/65

Defendant's Mailing Address:

2801 DOVER STREET

PISCATAWAY, NEW JERSEY 08854

Defendant's Residence Address:

_____( SAME AS ABOVE )_____

APRIL 12, 2006
Date of Imposition of Sentence

ALLYNE R. ROSS, U.S.D.J.

APRIL 12, 2006
Date

A TRUE COPY ATTEST
Date:_____

ROBERT C. HEINEMANN
CLERK OF COURT

By:_____
      DEPUTY CLERK

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of one hundred twenty (120) months. On both counts of the superseding indictment, to run concurrently.

__XXX__    The Court makes the following recommendations to the Bureau of Prisons: THAT THE DEFT BE HOUSED AT THE FORT DIX OR ALLENWOOD FACILITY.

_____    The defendant is remanded to the custody of the United States Marshal.
_____    The defendant shall surrender to the United States Marshal for this district,

        _____    at _____a.m./p.m. on _____.
        _____    as notified by the Marshal.

_____    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons

        _____    before 12:00 noon on _____.
        _____    as notified by the United States Marshal.
        _____    as notified by the Probation Office.

### RETURN

I have executed this Judgment as follows:

_____
_____
_____
_____
_____
_____

Defendant delivered on _____ to _____ at _____, with a certified copy of this Judgment.

_____
United States Marshal

By_____

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of five (5) years.

While on supervised release, the defendant shall not commit another Federal, state, or local crime and shall comply with the standard conditions that have been adopted by this court (set forth on the following page). If this judgment imposes a restitution obligation, it shall be a condition of supervised release that the defendant pay any such restitution that remains unpaid at the commencement of the term of supervised release. The defendant shall comply with the following additional conditions:

1) IF EXCLUDED; DEFT SHALL NOT RE-ENTER THE UNITED STATES ILLEGALLY.
2) DEFT SHALL NOT POSSESS ANY FIREARMS.

____ The defendant shall pay any fines that remain unpaid at the commencement of the term of supervised release.

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on probation or supervised release pursuant to this Judgment:

1) The defendant shall not commit another Federal, state or local crime;
2) the defendant shall not leave the judicial district without the permission of the court or probation officer;
3) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
4) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
5) the defendant shall support his or her dependents and meet other family responsibilities;
6) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
7) the defendant shall notify the probation officer within seventy-two hours of any change in residence or employment;
8) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
9) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
10) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
11) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
12) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
13) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
14) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

These conditions are in addition to any other conditions imposed by this Judgment.

## FINE WITH SPECIAL ASSESSMENT

The defendant shall pay to the United States the sum of $ 200.00 , consisting of a fine of $ N/A and a special assessment of $ 200.00 .

____ These amounts are the totals of the fines and assessments imposed on individual counts, as follows:

This sum shall be paid ____ immediately
                      ____ as follows:

XXX  The Court has determined that the defendant does not have the ability to pay any fines, cost of confinement or supervision.

____ The interest requirement is waived.
____ The interest requirement is modified as follows:

1          THE COURT:   There are two guidelines issues

2   remaining in this case; first the base offense level of the

3   offense based on the amount of narcotics the defendant

4   reasonably understood to be the subject of the conspiracy; and

5   second, whether the defendant should be subject to an

6   aggravating role enhancement.

7          As to the first issue, the base offense level, I am

8   persuaded by a review of the trial evidence that the

9   government is correct that the evidence establishes by a

10  preponderance that the defendant reasonably understood and

11  foresaw that the intended amount of narcotics to be imported

12  and distributed exceeded 50 kilograms of cocaine resulting

13  under the guidelines in a base offense level of 36.

14         This is so notwithstanding the fact that as the

15  government acknowledges, no specific narcotics seizure has

16  been linked to the defendant's involvement.  I reach this

17  conclusion based in part on the following evidence.  Although

18  there is no evidence that Mr. Pitcher was himself a party to

19  Lall's 2002 importations of cocaine with Sandy, Kenny Hall and

20  Cleveland Green on Universal Airlines from Trinidad and

21  Guyana, these importations shed light on Mr. Pitcher's

22  understanding of the amounts of cocaine intended to be

23  imported in connection with Lall's 2003 schemes in which the

24  defendant clearly participated.

25         Based upon an October 2002 seizure of more than

1  50 kilograms of cocaine coupled with other evidence presented,

2  it is inferable that the prior five importations in this

3  scheme also involved cocaine and may also have involved like

4  quantities of that drug.

5  In May of the following year, 2003, when Lall told

6  Sandy of his intent to recommence these cocaine importations,

7  Pitcher's tape recorded conversations with Lall make clear

8  that he too was by then a member of the conspiracy functioning

9  as a liaison between Lall and his suppliers in Guyana and

10  Trinidad.

11  In those tape recorded conversations defendant and

12  Lall discuss various methods to be used in importing the

13  cocaine, the same methods clearly identified in earlier

14  conversations enabling importation of 50 to more than

15  150 kilograms of cocaine at one time.

16  Similarly, in August-September of 2003, after

17  Williams on behalf of Lall enlisted Dennis to import cocaine

18  from Trinidad and Guyana via North American Airlines, Lall's

19  contemporaneous tape recorded telephone conversations with

20  Pitcher established that Pitcher again functioned as a liaison

21  between Lall and the suppliers and conversed with Lall about

22  methods to be used in importations contemplating shipments of

23  multiple kilograms.  Audio taped evidence also established

24  that Lall and Pitcher explored other routes, sources and

25  airlines for future importations including drugs from Peru via

ALLAN R. SHERMAN, CSR, RPR  Official Court Reporter
United States District Court  Eastern District of New York

1   Lan Chile and from Trinidad via Miami Air.

2           Also strongly probative of Pitcher's understanding

3   that the importation conspiracy with Lall involved more than

4   50 kilograms of cocaine was Government's Exhibit 38, a list of

5   source countries, routes, airlines and methods of importation

6   believed to have been written by Lall and found in Pitcher's

7   car.

8           The methods of importation identified on the list

9   "pallet or back wall or box in the middle," were all as

10  established by other evidence used to impart large quantities

11  of narcotics.

12          All of the above evidence viewed together with

13  defendant's admissions at his arrest that he functioned as

14  Lall's contact with the drug suppliers and took part in

15  subsequent drug distributions compels the conclusion that as

16  the government argues, Pitcher foresaw that his importation

17  and distribution conspiracy with Lall and others encompassed

18  at least 50 kilograms of cocaine.

19          Under the advisory guidelines, the defendant's base

20  offense level is 36.  On the other hand, I find the record

21  evidence insufficient to support any role enhancement.  The

22  evidence makes clear that, as defendant himself admitted, he

23  functioned as a liaison between Lall and Lall's suppliers.

24  The evidence established his role to be that of a contact

25  person.  He communicated Lall's inquiries and directives to

1 the supplies and communicated the suppliers' responses to

2 Lall. Nothing in the record suggests that defendant ever

3 enlisted a supplier. Indeed, nothing disputed defendant's

4 admission that it was actually a supplier who introduced

5 defendant to Lall.

6     Although the tape recordings make clear that Pitcher

7 actively schemed with Lall regarding the planning of the

8 shipments, there is no suggestion in any conversation that

9 defendant in any way functioned as a decision-maker or that he

10 recruited any coconspirator or that he managed or supervised

11 any other person. There is no suggestion that he exercised

12 any control over any coconspirator or any aspect of the

13 scheme. Absent such evidence, there can be no basis for a

14 role enhancement.

15     Apparently aware of the weakness of its argument

16 that the defendant functioned as a manager or supervisor, the

17 government urges in the alternative that I upwardly depart

18 because the defendant "nonetheless, exercised management

19 responsibilities over property, assets or activities of a

20 criminal organization". But just as there is no evidence that

21 defendant exercised control over or directed any

22 coconspirators, there is also no evidence that he exercised

23 management responsibilities over the property, assets or

24 activities of the conspiracy.

25     Notably, too, there is no evidence of what, if any,

1  compensation defendant earned for his participation and there

2  is certainly no evidence that he had a proprietary interest in

3  the narcotics that were the subject of the scheme.

4          In light of these facts, no role enhancement is

5  warranted under 3B1.1 notwithstanding the significance of

6  defendant's role in transmitting information back and forth

7  between Lall and Lall's suppliers, notwithstanding defendant's

8  demonstrated interest in assisting Lall in finding new

9  airlines and importation routes, and notwithstanding the

10  evidence that the defendant was fully aware of the nature and

11  scope of the criminal enterprise.

12          I therefore calculate defendant's advisory

13  guidelines as follows:  A base offense level of 36, a

14  deduction of two levels for the safety valve resulting in a

15  level 34, criminal history category one, carrying a range of

16  imprisonment under the advisory guidelines of 151 to 188

17  months.

18          MR. D'ALESSANDRO:  Your Honor, I'm sorry to

19  interrupt.  The government has been constrained in its

20  sentencing submissions because we were operating that there

21  was going to be no application for the safety valve.

22          Now that they are making the application, the

23  government should be able to provide the Court with a record

24  of the defendant's safety valve statements.

25          THE COURT:  That's why I tried to clarify that

1  before.

2  MR. D'ALESSANDRO: But there was never a question as

3  to whether or not if there was no role enhancement, he could

4  qualify. He clearly met with the government. That was one of

5  the things we were operating under at trial.

6  In conversations with defense counsel, it was made

7  clear that he is not applying for safety valve. Now that they

8  are making the -- so I couldn't refer to it in the statements

9  and I put it in as a footnote to the letter that I can't

10  provide the Court with direct evidence as to amounts of drugs

11  or anything else.

12  Admittedly, I haven't looked at the safety valve

13  proffer in some time. There may be nothing in there that

14  alters the Court's ultimate decision in the matter, but if we

15  are going to make a decision based on what is in fact part of

16  the record --

17  THE COURT: Let me ask Mr. Lombardino, do you want

18  it or don't you want it? If we do it, I think Mr.

19  D'Alessandro is right.

20  MR. LOMBARDINO: I do too, your Honor, that's why I

21  thought I made it clear in the beginning that I was not

22  seeking the safety valve.

23  Your Honor propounded a question --

24  THE COURT: I guess I'm asking you now. I agree

25  with Mr. D'Alessandro that if I give him the safety valve, he

1  is entitled to tell me what was in the proffer.  So my

2  question to you is:  Which way do you and your client want to

3  go?

4          MR. LOMBARDINO:  As I've stated all along, then I

5  have to restrain from asking for that because I think it would

6  be more harmful to my clients.

7          THE COURT:  That is fine.

8          Let me adjust that and say that he is a base offense

9  level of 36, carrying an advisory guideline of 188 to 235

10 months.

11         As required by Section 3553(a), I have considered

12 the advisory guidelines.  The nature and circumstances of the

13 offense have already been addressed.  The crime is a very

14 serious one, though the nature and extent of defendant's

15 participation does not appear to exacerbate the seriousness of

16 his offense.

17         The conspiracy was conducted without weapons or

18 violence and unlike many of his coconspirators, the defendant

19 who is not an airport employee did not make use of his

20 position in carrying out the crime.

21         Turning to the history and characteristics of the

22 defendant, Mr. Pitcher is a 40 year old illegal alien from

23 Trinidad and Tobago.  He and his girlfriend have four children

24 ages 17 to 6, all of whom are in school.  The defendant's

25 girlfriend and sister together purchased a home in New Jersey

1    where his family now lives.

2           Prior to defendant's arrest, he financially

3    supported his girlfriend and their four children.  The

4    defendant's girlfriend now works as a sales representative

5    earning $33,000 gross per year.

6           Although defendant's girlfriend is employed, her

7    income is noted as not great and imposition of a very lengthy

8    period of incarceration on defendant will no doubt pose

9    significant financial and emotional strain on her and their

10   children as documented in defendant's sentencing memorandum.

11          Defendant has no prior convictions and in fact has

12   never before had a brush with the law.  In order to support

13   his family, he has maintained a steady employment history as a

14   factory worker, a car salesman, a clothing merchant and most

15   recently a steam pipefitter.  As an illegal alien, he will

16   unquestionably be deported to Trinidad upon his release from

17   incarceration.

18          Given all of the factors pertaining to the defendant

19   and his offenses, I believe that a sentence of 120 months

20   imprisonment which is the statutory mandatory minimum is of

21   ample severity to accomplish the goals of sentencing

22   enumerated in the statute.

23          A sentence of 10 years is in my view extremely

24   severe, thus insuring just punishment for defendant's serious

25   offenses.  It also serves the goal of both specific and

1    general deterrence and particularly in view of defendant's

2    inevitable deportation insures the safety of the public and

3    provides sufficient assurance against recidivism.

4           Accordingly, on counts one and two, I sentence the

5    defendant to the custody of the Attorney General for a period

6    of 120 months to run concurrently, to be followed by a five

7    year period of supervised release with special conditions that

8    if deported, he not illegally reenter the United States and I

9    prohibit the possession of a firearm.

10           I make a finding that he is unable to pay a fine but

11   I will impose the mandatory 200-dollar special assessment.

12           Mr. Pitcher, as you know, you may appeal both the

13   conviction and the sentence and notice of appeal must be filed

14   within 10 days.

15           Mr. Lombardino, are you retained?

16           MR. LOMBARDINO:  I am, your Honor, but he has

17   retained appellate counsel.  He has retained appellate

18   counsel.

19           THE COURT:  You have already retained appelate

20   counsel?

21           THE DEFENDANT:  Yes.

22           THE COURT:  Because I was going to tell you if you

23   couldn't afford it, the Court would appoint someone to

24   represent you on appeal.

25           THE DEFENDANT:  I spoke to a lawyer and she told me

1 that she would do it.

2 THE COURT: It's up to you. If you can afford it,

3 that is fine. If you couldn't afford it, the Court would

4 appoint a lawyer for you.

5 The application will be made. I don't appoint the

6 lawyer. It's the Court of Appeals that does it but if that

7 were the case, if you qualified financially, if you qualified

8 financially for the appointment of counsel, and I don't know

9 if you do, you and Mr. Lombardino have a better idea of that,

10 you would have to fill out a financial affidavit and

11 undoubtedly the Court of Appeals would make a determination

12 about your financial eligibility and if so, it would appoint a

13 lawyer to represent you.

14 You don't get a free lawyer unless you can't afford

15 it.

16 Okay?

17 Mr. Lombardino, have you thought about a designation

18 for Mr. Pitcher?

19 MR. LOMBARDINO: I have thought about a designation.

20 I was hoping your Honor would suggest somewhere in Allenwood.

21 I think that is the closest, or Fort Dix. I would say Fort

22 Dix if that is possible.

23 THE COURT: I will recommend Fort Dix or if that is

24 not possible, Allenwood or someplace as close as possible to

25 his family in New Jersey.

1          MR. D'ALESSANDRO:   Your Honor, the defendant was

2     convicted of a superseding indictment.   There were no

3     outstanding counts as to that but as to all underlying

4     indictments, we would move that they be dismissed.

5          THE COURT:   Granted.

6          (Matter concluded.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25